UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TONYA M. CAVIN,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN. Commissioner of Social Security, [1]<br><br>                    Defendant. | Case No. 3:12-cv-05576-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 21, 2013 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On March 25, 2008, plaintiff filed an application for disability insurance benefits, alleging disability as of August 22, 2007, due to cystourethrocele, rectocele, pelvic relaxation,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

stress urinary incontinence, stress/panic, anxiety, and lower back pain. See Administrative Record ("AR") 11, 126, 175. That application was denied upon initial administrative review on April 11, 2008, and on reconsideration on September 11, 2008. See AR 11. A hearing was held before an administrative law judge ("ALJ") on March 17, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 28-61.

In a decision dated May 27, 2010, the ALJ determined plaintiff to be not disabled. See AR 11-22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 8, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981. On June 29, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1. The administrative record was filed with the Court on September 4, 2012. See ECF #12. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in rejecting plaintiff's credibility regarding her incontinence; and (2) in rejecting the opinion of evaluating psychiatrist, Scot Gibson, M.D. Plaintiff also argues reversal and remand is warranted here based on additional evidence submitted to the Appeals Council from Lowell Dightman, M.D. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision to deny benefits be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by

REPORT AND RECOMMENDATION - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

II.     The ALJ's Evaluation of Dr. Gibson's opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

REPORT AND RECOMMENDATION - 4

(citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected."  Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."  Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In early May 2008, plaintiff was evaluated by Dr. Gibson, who diagnosed her with a severe panic disorder, a dysthymic disorder and a moderate major depressive disorder, and gave her a global assessment of functioning ("GAF") score of 55.[3]  See AR 585.  In terms of plaintiff's work-related functional capabilities, Dr. Gibson further opined in relevant part:

> . . . The claimant shows no cognitive or other deficits, which would preclude management of her own funds, and I did not feel that she needs a payee at this time.

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34).

REPORT AND RECOMMENDATION - 5

> She likely has a fairly good capacity for simple and repetitive tasks, although given her panic, anxiety, and motivational problems, she would likely show more limitations in her ability to perform complex tasks.
>
> Her psychiatric symptoms do not seem to have impacted her ability to interact with coworkers, supervisors, or the public, although she may have physical limitations, which may cause difficulty for this.
>
> She may also have some limitations in her ability to just be consistent with full-time employment, although again, this does seem to have had as much with her physical complaints as with her psychiatric complaints. In short, I feel that she has a good chance of relief from her psychiatric complaints with aggressive treatment, although I am not sure that this would restore her capacity to work, as it does seem to rest on several physical symptoms and limitations, which I am not qualified to comment on.

AR 586. The ALJ gave Dr. Gibson's opinion "substantial weight" in finding plaintiff had the mental residual functional capacity ("RFC")[4] "to get along with others, understand simple instructions, concentrate and perform simple tasks, and respond and adapt to workplace changes and supervision but in a limited public employee contact setting." AR 20.

Plaintiff argues the ALJ did not read Dr. Gibson's entire opinion. In particular, plaintiff asserts the ALJ ignored the final section of that opinion in which Dr. Gibson indicated that much of her difficulty in being able to sustain work rested on her physical symptoms and limitations. See AR 586. It is true that the ALJ did not specifically address this portion of Dr. Gibson's opinion. See AR 20. Any error in the ALJ's failure to do so, however, the undersigned finds to

---

[4] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's RFC is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. RFC is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.

REPORT AND RECOMMENDATION - 6

be harmless.[5]  This is because even though as plaintiff points out a psychiatrist, as a licensed physician, is qualified to opine as to a claimant's physical impairments and their interaction with the claimant's mental impairments,[6] in this case Dr. Gibson himself expressly stated he was "not qualified to comment on" the impact of plaintiff's physical impairments. AR 586.   While plaintiff suggests Dr. Gibson merely was being "circumspect and modest" (ECF #20, p. 2), the undersigned finds Dr. Gibson was quite clear in what he was trying to convey here regarding his expertise, and there is nothing in his evaluation report that would indicate the Court should *not* take at face value his statement regarding his qualifications.[7]

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

---

[5] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

[6] See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("Under general principles of evidence law [the claimant's treating physician, a duly licensed one,] is qualified to give a medical opinion as to [the claimant's] mental state as it relates to her physical disability even though [that physician] is not a psychiatrist.").

[7] Accordingly, the undersigned also rejects plaintiff's assertion that the ALJ was required to re-contact Dr. Gibson in order to clarify his opinion. See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (ALJ's duty to further develop record triggered only when there is ambiguous evidence or when record is inadequate to allow for proper evaluation of evidence); 20 C.F.R. § 404.1512(e)(1) (providing that when evidence received from medical source is inadequate to determine whether claimant is disabled, that source will be re-contacted to seek additional evidence or clarification, when his or her report "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques").  Nor is plaintiff's argument that the ALJ failed to properly consider Dr. Gibson's diagnosis of a severe panic disorder entitled to any merit here, as she did not raise this issue in her opening brief and she has not shown that had such a diagnosis in fact been expressly considered and adopted by the ALJ, that it would have resulted in a different RFC assessment or ultimate disability determination. See Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered); see also Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding ALJ's error in failing to list bursitis in context of severity determination harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation process).

REPORT AND RECOMMENDATION - 7

discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Plaintiff argues the ALJ erred by failing to give any reasons for rejecting the credibility of her testimony regarding her incontinence.  The ALJ, however, did so as he expressly found in relevant part that:

> The record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date.  In his report of the claimant's urology examination, Dr. [John] Keene noted that in December 2006 the claimant reported exactly the same symptoms to Dr. Dightman (Exhibit 2F/35).  The fact that the impairments did not prevent the claimant from working at that time strongly suggest that it would not currently prevent work.

REPORT AND RECOMMENDATION - 8

AR 19.  The undersigned finds no error in the ALJ's reliance on this stated reason for rejecting plaintiff's credibility.  See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment).  The ALJ also provided other valid reasons for discounting plaintiff's credibility overall concerning her subjective complaints and allegations of disability, none of which specifically have been challenged here.  For example, the ALJ discounted plaintiff's credibility on the basis of evidence indicating that her activities of daily living showed greater functional capacity than alleged, that medication generally had been successful in controlling her symptoms and that she exaggerated her symptoms and limitations.  See AR 18-20; Tonapetyan, 242 F.3d at 1148 (ALJ properly discredited claimant's testimony based in part on "her tendency to exaggerate"); Morgan, 169 F.3d at 599 (claimant's credibility may be discounted due to medical improvement); Smolen, 80 F.3d at 1284 (ALJ may consider claimant's activities).  The ALJ further noted inconsistencies between plaintiff's subjective complaints and the objective medical evidence in the record.  See id.; Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).

III.     The Additional Evidence Submitted to the Appeals Council

   The record contains a letter dated July 20, 2010, in which plaintiff's treating physician, Dr. Dightman, opined in relevant part:

> I have reviewed all clinic notes and APFs since 2007.  The [patient] has developed Panic disorder which is a direct result of the incontinence she noted to be worse after the injury at work in 2007.  She has been on [sic] 15lb lifting restriction also [sic] that time.  I reviewed the job description of Flager [sic] and found that she would not be able to stand for long times or lift over 15lbs.
>
> She has a recommendation from Dr. [Kristina L.] Garrels for [sic] bladder sling procedure and has not yet been scheduled for this procedure.  She will require aggressive physical therapy to deal with her pelvic prolapse and will

REPORT AND RECOMMENDATION - 9

>continue to have the 15 lb lifting restriction.  The decision to not return this [patient] to work was based on the prolapse and the planned treatment that she has not yet scheduled.  I reviewed no job descriptions to evaluate other than the one that I responded to.
>
>The [patient] has applied for disability secondary to her chronic pain and per panic disorder.  The panic is worsened by he [sic] incontinence and the pain.
>. . .

AR 720.  This letter, which is dated after the ALJ issued his decision, was submitted for the first time to the Appeals Council.  Plaintiff argues it "establishes a new impairment in combination with the others – panic disorder, not acknowledge by the ALJ or factored into the five-step sequential analysis," a disorder that existed prior to the date of the ALJ's decision. ECF #16, p. 9.  Plaintiff asserts this additional evidence thus shows the ALJ's decision is not supported by substantial evidence.  The undersigned disagrees.

It is true that medical reports "containing observations made after the period for disability [has passed] are relevant to assess the claimant's disability" during that period, and thus "should not be disregarded solely" on the basis that they are retrospective in nature. Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).  The record, furthermore, shows that beginning in August 2009, Dr. Dightman's treatment notes contain diagnoses of panic disorder. See AR 709, 712, 717.  However, Dr. Dightman never assessed plaintiff with any actual work-related limitations due to that diagnosis, including in his July 20, 2010 letter.  Indeed, Dr. Dightman noted that plaintiff's symptoms were more consistent with a depressive disorder, which he noted both had markedly improved and was well-controlled on medication. See id.  As such, plaintiff has not shown the ALJ's decision to be unsupported by substantial evidence, as no reasonable ALJ would come to a different disability determination based on the July 20, 2010 letter.[8]

---

[8] The parties dispute whether this Court can remand this matter on the basis of additional evidence submitted to the Appeals Council for the first time without a showing of good cause for failing to submit that evidence earlier.  The parties, however, do not dispute that in determining whether remand is warranted, the standard of review is whether

REPORT AND RECOMMENDATION - 10

CONCLUSION

For the foregoing reasons, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 21, 2013**, as noted in the caption.

DATED this 31st day of May, 2013.

Karen L. Strombom
United States Magistrate Judge

---

the ALJ's decision is supported by substantial evidence in light of that additional evidence. Accordingly, because as just discussed, Dr. Dightmen's July 20, 2010 letter would not cause the ALJ's decision in this case to no longer be supported by substantial evidence and therefore does not warrant remand, the Court need not address the good cause issue, and therefore the undersigned declines to do so.

REPORT AND RECOMMENDATION - 11